**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

**SHAYAN KAHHAL, A# 058873326,**

**Petitioner,**

**v.** **Case No. 2:26cv390**

**PAMELA J. BONDI, *et al.*,**

**Respondents.**

## REPORT AND RECOMMENDATIONS

Pending before the Court is a Petition for a Writ of Habeas Corpus submitted pursuant to 28 U.S.C. § 2241 ("the Petition"), ECF No. 1, and a Motion to Stay, ECF No. 7. Respondents oppose granting the Petition. ECF No. 8. This case was referred to the undersigned United States Magistrate Judge ("the undersigned") pursuant to 28 U.S.C. § 636(b)(1)(A)–(B) and Rule 72(b) of the Federal Rules of Civil Procedure. For the foregoing reasons, the undersigned **RECOMMENDS** that the Petition, ECF No. 1, be **GRANTED**, and that Petitioner be immediately released from custody under reasonable conditions of supervision. The undersigned further **RECOMMENDS** that the Motion to Stay, ECF No. 7, be **DENIED**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Petition was filed on April 22, 2026. ECF No. 1. Petitioner Shayan Kahhal ("Petitioner") is a native and citizen of Iran who is currently detained by Immigration and Customs Enforcement ("ICE") at the Caroline Detention Facility pursuant to 8 U.S.C. § 1231. ECF No. 8, attach. 1 at 2. Petitioner was admitted to the United States as a lawful permanent resident on April 30, 2007. *Id.* On September 2, 2011, Petitioner was convicted in the Norfolk Circuit Court of felony rape, in violation of Virginia Code § 18.2-61, and two counts of forcible sodomy, in

violation of Virginia Code § 18.2-67.1. *Id.*; *see* ECF No. 8, attach. 2 at 2; ECF No. 8, attach. 3 at 2; ECF No. 8, attach. 4 at 2. For the rape conviction, Petitioner was sentenced to twelve years' imprisonment, with five years suspended, and twelve years of unsupervised probation. ECF No. 8, attach. 1 at 2–3; *see* ECF No. 8, attach. 2 at 3. For the forcible sodomy convictions, Petitioner was sentenced to twelve years' imprisonment, with the entire sentence suspended, and twelve years of unsupervised probation. ECF No. 8, attach. 1 at 3; *see* ECF No. 8, attach. 3 at 3; ECF No. 8, attach. 4 at 3.

On March 2, 2012, while Petitioner was incarcerated, Enforcement and Removal Operations ("ERO") encountered him and served him with a Notice to Appear ("NTA"). ECF No. 8, attach. 1 at 3. The NTA charged Petitioner with removability under 8 U.S.C. § 1227(a)(2)(A)(iii) as a noncitizen convicted of an aggravated felony, specifically a crime of violence as defined in 18 U.S.C. § 16 for which a term of imprisonment of at least one year was imposed, and as a noncitizen convicted of an aggravated felony involving rape under 8 U.S.C. § 1101(a)(43)(A). *Id.*

On June 8, 2017, Petitioner was placed in removal proceedings before the Arlington, Virginia Immigration Court. *Id.* On June 19, 2017, Petitioner was taken into civil immigration custody pending his removal proceedings. *Id.* On October 25, 2017, an Immigration Judge ordered Petitioner removed from the United States to Iran but granted deferral of removal under the Convention Against Torture. *Id.* Petitioner waived his right to appeal, and the removal order became administratively final on that date. *Id.* Also on October 25, 2017, Petitioner was released from ICE custody pursuant to an Order of Supervision ("OSUP"). *Id.*

On January 14, 2026, Petitioner reported to the ERO Norfolk Sub Office, where he was encountered by ERO officers. *Id.* On that same date, ERO revoked Petitioner's OSUP and served

him with a Form I-229(a), Warning for Failure to Depart; a Form I-205, Warrant of Removal/Deportation; and a Notice of Removal advising him that ICE intended to remove him to "an unknown country." *Id.* at 3–4; *see* ECF No. 8, attach. 5 at 2–3; EC No. 8, attach. 6 at 2.

On April 13, 2026, ICE completed a custody review and served Petitioner with a Decision to Continue Detention letter. ECF No. 8, attach. 1 at 4; *see* ECF No. 8, attach. 7 at 2–4. Following that review, ICE determined that Petitioner posed a danger to the community, to the safety of other persons, or to property, and therefore determined that his detention would continue pending his removal from the United States. ECF No. 8, attach. 1 at 4; *see* ECF No. 8, attach. 7 at 2.

Respondents assert that it is actively working with the Department of Homeland Security ("DHS") and the Department of State to effectuate Petitioner's removal to a third country. ECF No. 8, attach. 1 at 4. According to Respondents, Petitioner has been nominated for removal to a third country pursuant to "an agreement recently signed" between the Department of State and the third country. *Id.*

Petitioner contends that his continued detention violates the Due Process Clause of the United States Constitution and the Supreme Court's decision in *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). ECF No. 1 at 8–9. He argues that his removal is not reasonably foreseeable because, as an Iranian citizen, his removal to Iran has been "judicially withheld." *Id.* at 6. He further argues that ICE has historically removed "less than 1% of Iranian citizens," citing statistics published by ICE. *Id.* Petitioner also asserts that no viable third country of removal exists. He asserts that he does not hold a residency permit in any other country and, "to [his] knowledge," no foreign government has issued travel documents for him. *Id.* He also argues that his removal to a third country with "good diplomatic relations with [Iran]" would likely result in his repatriation to Iran, where he claims a fear of removal to. *Id.* Accordingly, because he has cooperated with ICE's

efforts to facilitate his removal but has not yet been removed, Petitioner seeks his immediate release from ICE custody under reasonable conditions of supervision. *Id.* at 6, 10.

On May 12, 2026, Petitioner filed a motion seeking an order prohibiting his transfer out of the jurisdiction of the ICE Washington Field Office Director while the Petition is pending, which Petitioner titled as a "Motion to Stay." ECF No. 7.

Respondents filed an Opposition to the Petition on May 24, 2026, along with the Declaration of Michael Coles, Acting Assistant Field Office Director with ICE. ECF No. 8; ECF No. 8, attach. 1. Respondents argue that the Petition should be denied because Petitioner's detention complies with *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). ECF No. 8 at 4–5. Specifically, Respondents argue that Petitioner's detention has not exceeded six months and thus remains within the presumptively reasonable period set by *Zadvydas*, and that Petitioner cannot demonstrate that his removal is not reasonably foreseeable because Petitioner has been nominated for removal to a third country. *Id.* at 10–11. Respondents further argue that Petitioner requests additional due process than what is required under *Zadvydas*, and that even if Petitioner was entitled to additional due process, the relevant test under *Mathews v. Eldridge* does not require the relief he seeks and weighs in favor of his continued detention. *Id.* at 11–17.

Petitioner filed a reply on June 15, 2026, maintaining that his continued detention is unlawful. ECF No. 10 at 10. Petitioner argues that Respondents have not provided any specific evidence regarding the steps they have taken "or imminently intend to take" to effectuate his removal to the unidentified third country designated as his country of removal. *Id.* Petitioner asserts that he remains unaware of the identity of that country and does not know whether it has initiated any formal process to admit him or issue travel documents. *Id.* Petitioner further argues that the three countries of removal he identified to ICE as potential destinations—Australia,

England, and Canada—have all rejected his "status requests." *Id.* Accordingly, Petitioner argues that there is no significant likelihood of removal in the reasonably foreseeable future because he has no legal right to remain in any country other than Iran, where removal has been judicially withheld based on his protection under the Convention Against Torture. *Id.*

Accordingly, this matter is ripe for recommended disposition.

## II. DISCUSSION

Pursuant to 28 U.S.C. § 2241, federal courts are authorized to issue a writ of habeas corpus to one who "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "The writ of habeas corpus has traditionally 'served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest.'" *Luna Sanchez v. Bondi*, No. 1:25-CV-018888, 2025 WL 3191922, at *2 (E.D. Va. Nov. 14, 2025) (quoting *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001)). Habeas is "regularly invoked on behalf of noncitizens." *Id.* (quoting *Quispe-Ardiles v. Noem*, No. 1:25-cv-01382, 2025 WL 2783800, at *3 (E.D. Va. Sept. 30, 2025)) (additional citations omitted).

Pursuant to the Due Process Clause of the Fifth Amendment, no *person* shall "be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. The Due Process Clause extends to *all* persons, including "aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). "As the Supreme Court has recognized, 'habeas corpus in the federal courts provides a mode for the redress of denials of due process of law. Vindication of due process is precisely its historic office.'" *Castaneda v. Perry*, 95 F.4th 750, 762 (4th Cir. 2024) (citing *Fay v. Noia*, 372 U.S. 391, 402 (1963), *overruled on other grounds by Wainwright v. Sykes*, 433 U.S. 72 (1977)).

After an order of removal becomes final, the Attorney General "shall detain the alien" during the ninety-day removal period established under 8 U.S.C. § 1231(a)(2)(A). *Zadvydas v. Davis*, 533 U.S. 678, 683 (2001). Under 8 U.S.C. § 1231(a)(3), aliens[1] who do not leave the United States or are not removed during the removal period "shall be subject to supervision" pending their removal. 8 U.S.C. § 1231(a)(3). Those who are subject to supervision upon release include individuals removable under § 1227(a)(2). *Id.* § 1231(a)(6).

Section 1231 "does not specify a time limit on how long DHS may detain an alien in the post-removal period." *Castaneda v. Perry*, 95 F.4th 750, 755–56 (4th Cir. 2024). However, the Supreme Court in *Zadvydas* held that the INA contains an implicit limitation of this detention period past ninety days: detention is presumptively reasonable for up to six months. *Zadvydas*, 533 U.S. at 683. After that six-month period has elapsed, if the alien demonstrates "that there is no significant likelihood of removal in the reasonably foreseeable future," then the Government must respond with evidence sufficient to rebut that showing. *Id.* The six-month presumption does not require automatic release once an alien's detention reaches six months; rather, an alien may remain detained until it is determined that there is no significant likelihood of removal in the reasonably foreseeable future. *Id.*

**A. Petitioner's Detention Has Exceeded the Presumptively Reasonable Period of Detention**

Respondents argue that Petitioner's detention complies with *Zadvydas* in part because Petitioner has not been detained for six months, thereby rendering his detention presumptively reasonable. ECF No. 8 at 10. While Respondents correctly observe that Petitioner was only in

[1] Consistent with the INA's text, the Court uses the term "alien" here. *See* § 1101(a)(3) (defining an "alien" as "any person not a citizen or national of the United States").

ICE custody for three months at the time of filing the Petition—from January 14, 2026, to April 22, 2026—the Court's analysis is not limited to the circumstances existing at the time of filing.

Federal courts routinely consider post-filing developments in habeas proceedings challenging immigration detention. *See, e.g.*, *Suri v. Trump*, 785 F. Supp. 3d 128 (E.D. Va. 2025) (holding that habeas jurisdiction was proper in the Eastern District of Virginia despite subsequent developments in the petitioner's detention). Moreover, the structure of *Zadvydas* itself confirms that the six-month period operates as a presumption, not a rigid jurisdictional bar that forces federal courts to consider only evidence existing on the date of the petition's filing. *See Cruz Medina v. Noem*, 794 F. Supp. 3d 365, 375 (D. Md. 2025) ("During the six-month period, '[t]he presumption of reasonableness is the default,' and the government 'bears no burden to justify detention.' . . . But if a petitioner 'claim[s] and *prove[s]* . . . that his removal is not reasonably foreseeable'—including during the six-month period—the petitioner 'can overcome that presumption' and detention is no longer authorized." (citation omitted)).

To hold that this Court may not consider the passage of time occurring during the pendency of a habeas petition would effectively insulate detention from review so long as the Petition was filed before the six-month mark, even if detention later became prolonged and potentially unreasonable. Such an approach would be inconsistent with *Zadvydas*, which makes clear that the ultimate inquiry is whether continued detention remains reasonably necessary to effectuate removal.

Here, more than six months have elapsed since Petitioner was taken into ICE custody on January 14, 2026. His detention has therefore exceeded the six-month period that *Zadvydas* deemed presumptively reasonable, and the Court therefore proceeds to consider whether there is a significant likelihood of removal in the reasonably foreseeable future.

**B. There is no Significant Likelihood of Petitioner's Removal in the Reasonably Foreseeable Future**

Because Petitioner has now been detained following his final order of removal for longer than six months, the burden shifts: if Petitioner provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, Respondents must come forward with evidence sufficient to rebut that showing. *Zadvydas*, 533 U.S. at 701.

Respondents argue that Petitioner has failed to show that there is no significant likelihood of removal in the reasonably foreseeable future because Petitioner has been nominated for removal to an unidentified third country. ECF No. 8 at 10–11. According to Respondents, "ICE is actively working with DHS and the Department of State on Petitioner's removal to a third country" pursuant to "an agreement recently signed between the United States Department of State and the third country." ECF No. 8, attach. 1 at 4.

Although Respondents contend that they are "actively working" on removing Petitioner, the record does not demonstrate that removal is significantly likely in the reasonably foreseeable future. *Id.* Respondents do not indicate whether travel documents have been requested or issued, nor do they provide any evidence that a formal admission process with the proposed third country has been completed or is underway. Further, Respondents have provided virtually no information about the proposed third country, including the name of the country, whether the country has agreed to accept Petitioner or has accepted any third-country removals in the past, and, if so, how long that removal process has taken. By contrast, Petitioner represents that the countries he identified as potential destinations have denied his status requests, and Respondents have offered no evidence to the contrary. *See* ECF No. 10 at 10. Respondents state only that the unidentified potential country of removal has recently signed an agreement with the Department of State to accept third-country removals. On this record, there is little basis for the Court to assess the

likelihood that the country will ultimately accept Petitioner or that his removal can be effectuated within a reasonably foreseeable period of time.[2]

This Court has previously found that removal is not reasonably foreseeable under similar factual circumstances. In *Elgendy*, removal was not reasonably foreseeable where the petitioner—a citizen of Egypt—was submitted for consideration for removal to an undisclosed third country. *Elgendy v. Bondi*, No. 2:25-cv-763, 2026 WL 1014146, at *2 (E.D. Va. Mar. 9, 2026), *report and recommendation adopted sub nom.*, *Elgendy v. Blanche*, No. 2:25-cv-763, 2026 WL 1010469 (E.D. Va. Apr. 14, 2026). Respondents there provided no information regarding the timeframe for the review process or whether the review process had ever resulted in the successful removal of Egyptian citizens pursuant to a third-country removal agreement in the past. *Id.* Thus, the Court found the lack of information regarding the petitioner's removal to weigh in favor of finding that removal was not reasonably foreseeable. *Id.*

In *Banoub*, removal was not reasonably foreseeable where the petitioner was nominated for third country removal to an undisclosed third country and respondents "could not estimate the unnamed country's timeline to accept" the petitioner. *Banoub v. Crawford*, 819 F. Supp. 3d 477, 484 (E.D. Va. 2025). There, the Court found that the petitioner could not be removed to his home country of Egypt due to his grant of withholding of removal, and the respondent's argument that third-country removal was a possibility primarily rested on the petitioner's nomination for review. *Id.* at 488–89. The court noted the absence of a receiving country's commitment to accept the petitioner, the lack of travel documents, the uncertain timeline of the third-country review process, and the respondent's failure to identify any prior successful removals under the agreement at issue.

[2] Respondents' failure to disclose even basic information regarding the proposed third country or the steps taken to effectuate Petitioner's removal is troubling and difficult to reconcile with Respondents' assertion that removal is "actively" being pursued. *See* ECF No. 8, attach. 1 at 4.

*Id.* at 489 ("Without any evidence about timeframes for the review process in general—and particularly as to the country at issue—the Court is not persuaded that [the petitioner's] removal is reasonably foreseeable to a third country with *no* history of third country removals from the United States.").

As in *Elgendy* and *Banoub*, Respondents here rely on the existence of a third-country removal agreement while offering no evidence regarding the specific steps taken or expected timeline of the removal process here. ICE has previously acknowledged that third-country removals pursuant to such agreements involve multiple steps and that the timeframe for completion "varies." *See Banoub*, 819 F. Supp. 3d at 482–83 ("*Third*, ICE's list of nominated aliens is sent to the third country for review. The third country may accept all, some, or none of the nominated aliens on the list. Unit Chief Mull testified that the timeline for the review process 'varies,' and that there is no set amount of time within which a third country must complete its review of potential aliens to accept."). Here, Respondents have neither identified how much of the process remains outstanding nor provided any estimate as to when the process might be completed, leaving the Court with no meaningful basis to conclude that Petitioner's removal is likely to occur within a reasonably foreseeable period.

Accordingly, the Court finds that Petitioner has provided good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future and that Respondents have not presented sufficient evidence to rebut that showing.

**C. Petitioner's Immediate Release from Custody is the Appropriate Relief**

Having determined that there is no significant likelihood of Petitioner's removal in the reasonably foreseeable future and, thus, Petitioner's continued detention is unlawful, the Court

must now consider the appropriate remedy.[3] Under *Zadvydas*, the Supreme Court concluded that if the government cannot rebut a petitioner's showing that removal is not significantly likely in the reasonably foreseeable future, continued detention is not statutorily authorized. 533 U.S. at 699 ("Consequently, interpreting the statute to avoid a serious constitutional threat, we conclude that, once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute."). Consistent with that directive, courts across the country have ordered the release of individuals subjected to unlawful post-removal detention. *See, e.g.*, *Rodriguez Romero v. Ladwig*, No. CV 25-1106, 2026 WL 321437 (M.D. La. Feb. 6, 2026); *Roble v. Bondi*, 803 F. Supp. 3d 766 (D. Minn. 2025); *Nguyen v. Hyde*, 788 F. Supp. 3d 144 (D. Mass. 2025).

Here, because Respondents have failed to demonstrate a significant likelihood of Petitioner's removal in the reasonably foreseeable future, Petitioner's continued detention fails to comport with the due process limitations recognized in *Zadvydas*. Absent such a showing, further confinement would contravene the constitutional and statutory safeguards set forth by the Supreme Court. Accordingly, habeas relief is warranted, and Petitioner must be released from custody.

**D. Petitioner's Motion to Stay**

In addition to habeas relief, Petitioner seeks an order prohibiting Respondents from transferring him "out of the jurisdiction of the ICE Washington Field Office Director" during the pendency of the Petition, unless Respondents decide to release Petitioner prior to any orders of relief by this Court. ECF No. 7 at 1. As this is an action under 8 U.S.C. § 1231, it has not been

[3] Respondents further argue that Petitioner requests additional due process than what is required under *Zadvydas*, and that even if Petitioner was entitled to additional due process, the relevant test under *Mathews v. Eldridge* does not require the relief he seeks and weighs in favor of his continued detention. ECF No. 8 at 11–17. This Court has previously recognized that *Zadvydas* defines the process to which Petitioner is entitled. *See, e.g.*, *Wang v. Crawford, et al.*, No. 2:26-cv-111, ECF No. 12 at 8, *report and recommendation adopted*, No. 2:26-cv-111, ECF No. 13. Accordingly, the Court need not separately address Respondents' arguments regarding due process under *Mathews v. Eldridge*.

the Court's practice to restrict a petitioner's transfer while their removal is pending. This is because Respondents maintain authority to effectuate removal during the pendency of habeas proceedings. *See* 8 U.S.C. § 1231(a). Imposing a transfer restriction in this context would interfere with Respondents' execution of the final removal order, and Petitioner has not alleged that his transfer would prejudice his ability to litigate his claims. Accordingly, the undersigned **RECOMMENDS** that Petitioner's Motion to Stay, ECF No. 7, be **DENIED**.

## III. RECOMMENDATION

For the reasons explained above, the Court **RECOMMENDS** that the Petition, ECF No. 1, be **GRANTED**, and that Petitioner be immediately released from custody under reasonable conditions of supervision. The undersigned further **RECOMMENDS** that the Motion to Stay, ECF No. 7, be **DENIED**.

## IV. REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, Petitioner is notified that:

1. Any party may serve on the other party and file with the Clerk of this Court specific written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is forwarded to the objecting party. *See* 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Federal Rule of Civil Procedure 6(a). A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

2. A United States District Judge shall make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made. The parties are further notified that failure to file timely specific written objections to the

above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984), *cert. denied*, 474 U.S. 1019 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1954).

The Clerk is **DIRECTED** to forward a copy of this Report and Recommendation to Petitioner at his address on record.

/s/

Lawrence R. Leonard
United States Magistrate Judge

Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
June 23, 2026